# COURT OF OAHU.

## JANUARY TERM, 1847.

### ROBERT W. WOOD *vs.* BENJAMIN STARK, Jr.

*A lease made to defeat an existing judgment against the lessor, the lessee having knowledge thereof, is fraudulent, and void as to third parties.*

Counsel having closed, his Honor, Judge Lee, charged the jury in substance as follows:

*Gentlemen of the Jury:*

The case now before you for consideration and decision, is one which was brought into this court by an appeal from the court below. In all cases of this kind, that is, in cases of appeal, the parties are allowed to introduce the same evidence that was admissible in the court below, together with all new evidence that may have arisen and come to their knowledge since the former trial.

Gentlemen, that evidence has been introduced : you have heard the testimony of the witnesses upon the stand, and it now remains for me to charge and direct you as to the law applicable to this case, leaving it in your hands, well and truly to try the same, and verdict give according to the evidence and the law.

The plaintiff in this case brings his action to recover the sum of $55, for wharfage, had by the defendant in July last, and founds his claim upon a certain lease executed to him by Ladd & Co., in the previous month of June. The defendant admits that he has had the wharfage—he admits that he owes the $55, but denies that he owes it to the plaintiff, on the ground that the lease under which he claims is fraudulent. He declines paying the money to the plaintiff for the reason that he has been stopped from so doing by the sheriff with an execution and trustee process in his hands, issued upon a judgment rendered in this court, in favor of Pelly & Allan, previous to the execution of the lease.

But the ground has been assumed before you, gentlemen, by the plaintiff's counsel, that the defendant has no right to inquire into the legality or illegality of the lease upon which he founds his claim. But the authorities which he brings in support of this doctrine, do not go to that length. Clearly, Stark could not bring any action at law or equity to annul this lease, however illegal it might be, because, not being a creditor, it would be a matter with which he had no business to meddle. But it is quite a different thing to say that, when the lease (the ground of the plaintiff's claim) is endeavored to be enforced against him, that he has no right to impeach the validity of that lease.

B

By no means do the cases cited by the learned counsel go to that extent. To allow such a doctrine to prevail in this case, would be to allow the merits of the case to be avoided on the merest technicality.

Gentlemen, the main question for you to determine is, whether the lease is good or no. If, upon a candid and impartial consideration of the testimony, you find that the lease is good—that it was made in good faith, and without any intent to defraud creditors, then your verdict will be for the plaintiff, in the sum of $55 But if, on the other hand, you shall find that it was made with the knowledge of both parties to the lease, of the existence of judgments resting upon the estate of Messrs. Ladd & Co., and with the intent to defeat those judgments, then your verdict will be for the defendant.

This, gentlemen, is the law of the land, the law of Great Britain, the United States, and of every country with whose laws I am at all conversant. It is a rule of law which has been firmly established and strictly adhered to since the time of Twyne's case, in the days of Lord Coke, down to the present moment. It is a rule of law, founded in integrity and fair dealing between man and man ; a rule of law based on the great principles of morality and public policy—for you will see at once, that if we were allowed, when we find that judgments are existing against us, or are about to be recovered against us; if we were allowed, I say, in such circumstances to transfer our property into the hands of others, and thus defeat the just claims of honest creditors, there would be no safety in the every day transactions of life—no safety in that credit which we are daily giving and lending to each other.

Lord Mansfield, that great lawyer, perhaps : may say the brightest star that ever shone in the firmament of the English law, has said in the case of Cadagan *vs.* Kennett, that any purchase of a debtor's property, with the intent to defeat a judgment, cannot stand in the eye of the law, even though the purchaser pay a full, fair, and valuable consideration for the same. Why ? Because the purpose is iniquitous. It would be assisting one man to cheat another, which the law will never allow.

The late and very deeply lamented Judge Story, in his Commentaries on Equity, recognizes the same doctrine, and gives additional emphasis to the words of Mansfield. We may say the same of Blackstone, Kent, and of every other commentator of English and American law.

There is no positive evidence, gentlemen, that the plaintiff knew of the existence of the judgment of Messrs. Pell & Allan, at the time of entering into the lease, but there are some circumstances going to that effect, which, without comment, I leave in your hands, to give them such weight as you may think they deserve.

To reiterate what I have already said, the main question for you to decide will be, whether the lease is valid or invalid. If you shall find it to have been made in good faith, then your verdict will be for the plaintiff in the sum of $55. If you shall find that it was made in bad faith, with the intent to defraud creditors, then your verdict will be for the defendant.

The jury retired, and in a few minutes returned with a verdict for defendant.

Mr. DeFiennes, for plaintiff.

Mr. Jasper, for defendant.